# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELANIE E. DAMIAN, AS RECEIVER OF TODAY'S GROWTH CONSULTANT, INC. (dba THE INCOME STORE),<br><br>Plaintiff,<br><br>v.<br><br>PEPPERDINE UNIVERSITY,<br><br>Defendant. | Case No. 21-cv-02371<br><br>Hon. Thomas M. Durkin |

## DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Pepperdine University ("Pepperdine"), by its undersigned counsel, hereby moves to dismiss (the "Motion") Plaintiff Melanie Damian's Complaint ("Complaint") with prejudice. In support of its Motion, Pepperdine respectfully states as follows:[1]

## INTRODUCTION

1. Plaintiff Melanie Damian, as receiver of Today's Growth Consultant, Inc. ("Plaintiff") brings a three (3) count Complaint against Pepperdine seeking judgment in excess of $280,000.00 for funds she alleges were improperly conveyed to it from Today's Growth Consultant, Inc. (dba The Income Store) ("TGC").[2] *See* Plaintiff's Complaint (ECF No. 1). Specifically, Plaintiff seeks to avoid and recover TGC's payments to Pepperdine on the bases of actual fraud (Count I), constructive fraud (Count II), and unjust enrichment (Count III). *See id.* at

---

[1] Pepperdine's counsel conferred with Plaintiff's counsel on July 12, 2021 concerning the filing of this Motion; Pepperdine is informed that Plaintiff intends to oppose the Motion, and the parties have agreed to a briefing schedule, which will be incorporated in a joint submission to the Court to be filed contemporaneously herewith.

[2] TGC and its principal/President, Kenneth Courtright, are the subject of an SEC action wherein it is alleged that they orchestrated a Ponzi scheme, resulting in capital losses suffered by various investors and creditors (NDIL Case No. 19-cv-8454). Plaintiff was appointed Receiver in the SEC action and brings suit against Pepperdine in that capacity.

Counts I, II, and III. The allegations contained within Count I, brought pursuant to 740 ILCS 160/5(a)(1), are subject to Federal Rule 9(b) fraud pleading requirements, and Plaintiff fails to lodge them with sufficient particularity. Similarly, within Count II, alleging constructive fraud under 740 ILCS 160/5(a)(2), Plaintiff fails to adequately plead that TCG did not receive reasonably equivalent value in exchange for the transferred funds, nor does Plaintiff adequately allege that TGC was insolvent or undercapitalized at the time of each of the transfers. Plaintiff's claim for unjust enrichment constitutes an equitable cause of action only available to her in the absence of an adequate legal remedy. Finally, certain payments made to Pepperdine fall outside the statute of limitations period defined by 740 ILCS 160/10 and therefore cannot be avoided and recovered by the Plaintiff. As such, each of Plaintiff's three counts fail to state a claim upon which relief can be granted, and should be dismissed pursuant to Federal Rule 12(b)(6).

## LEGAL STANDARD

2. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3. This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Bell v. City of Country Club Hills,* 841 F. 3d 713, 716-717 (7th Cir. 2016). It is well-established that a complaint must contain sufficient factual matter to state a claim for relief, and that threadbare recitals of the elements of a cause of action should not be accepted in the absence of supporting factual allegations. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Bonte v. U.S. Bank,*

2

*N.A.*, 624 F.3d 461, 463 (7th Cir. 2010); *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995); *Davis v. Frapolly*, 747 F.Supp. 451, 453 (N.D. Ill. 1989); *Carter v. O'Hare Hotel Investors*, 736 F.Supp. 158, 160 (N.D. Ill. 1989); *Stevens v. Umsted*, 921 F.Supp. 530, 532 (C.D. Ill. 1996). Allegations which simply mirror the elements of a cause of action are inadequate, and despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged." *Copelan*, 2015 WL 1413107, at *4 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)); *Southwest Waffles*, 460 B.R. at 137. "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).

4. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly,* 550 U.S. at 562 (quoted case omitted). Therefore, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, courts routinely "reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. International Brotherhood of Teamsters Local 781,* 947 F.3d 464, 469 (7th Cir. 2020); *Twombly*, 550 U.S. at 555.

5. In addition, since certain of the Receiver's claims sound in fraud, the heightened pleading standards of Fed. R. Civ. P. 9(b) apply. Federal Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this rule, courts in this District have required a more rigorous pleading standard under which a plaintiff must "state with particularity the circumstances constituting fraud." *In re Equipment Acquisition Resources, Inc.*, 481 B.R. 422, 430-31 (Bankr. N.D. Ill. 2012). The plaintiff must state

3

the "who, what, when, where, and how" of the alleged fraud: "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also In re Lancelot Investors Fund, L.P.*, No. 10-AP-2039, 2012 WL 714978, at *4 n.1 (Bankr. N.D. Ill. Mar. 2, 2012).

6. The Seventh Circuit has held that Federal Rule 9(b) applies to any fraudulent transfer claim – regardless of whether those claims sound in actual or constructive fraud. *In re Life Fund 5.1 LLC*, No. 10 AP 42, 2010 WL 2650024, at *3 n.3 (Bankr. N.D. Ill. June 30, 2010) (citing *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997) ("the requirements of Rule 9(b) apply nonetheless, whether the claim is based on actual or constructive fraud")); *see also In re Lancelot Inv. Fund*, 2012 WL 714978, at *3 n.1 (N.D. Ill. March 2, 2012) (applying Federal Rule 9(b) to plaintiff's constructive fraud claim).

## ARGUMENT

### A. The Allegations Contained Within Count I of Plaintiff's Complaint Fail to Satisfy the Heightened Pleading Standards of Federal Rule 9(b).

7. Plaintiff brings Count I under 740 ILCS 160/5(a)(1) (the Illinois Uniform Fraudulent Transfer Act or "IUFTA"), which states that a transfer is deemed fraudulent if made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Such intent, if proven, constitutes "fraud in fact," and claims sounding in it are subject to a heightened pleading standard. *See DAN Venture III, L.P. v. Touris*, 598 B.R. 430, 441-442 (N.D. Ill. 2019). As noted above, under Federal Rule 9(b), allegations of fraud have to be pled with particularity, and while said particularity is generally a case-specific inquiry, plaintiffs are obligated to utilize a means of "injecting precision and some measure of substantiation." *BCBSM, Inc. v. Walgreen Co.*, 2021 WL 77233 at *7 (citing *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). At a minimum, plaintiffs must specify the "'who, what, when, where, and how' of the fraud." *Id*. Requisite fraudulent intent must be pled for each transfer sought to be avoided, and the allegations

against a defendant must be connected to the debtor's scheme to defraud creditors. *In re Equipment Acquisition Resources, Inc.*, 481 B.R. 433, 443 (Bankr. N.D. Ill. 2012). The IUFTA enumerates eleven (11) "badges of fraud," from which an inference of intent can be drawn. 740 ILCS 160/5(b).

8. Here, Plaintiff makes broad, unsubstantiated allegations that TGC operated as a Ponzi scheme and that payments made to Pepperdine were done in furtherance of it. *See* Pl.'s Compl. at Count I, ¶¶ 53-54. The only information about said payments is included within a QuickBooks accounting of each of TGC's purported payments to Pepperdine. *See* Pl's Compl. at Exhibit A. Other than account numbers, dates, and dollar figures, the table is devoid of any information detailing the nature of the payments or, more importantly, how they were connected to TGC's alleged fraudulent scheme, as required by *In re Equipment Acquisition Resources, Inc.* Likewise, there is no attempt to assign intent to each individual payment. Plaintiff instead consistently identifies an aggregate transfer amount of $280,997.91, which constitutes the sum of fifteen (15) individual payments made over the course of nearly three years. *See, e.g.,* Pl.'s Compl. at ¶ 50; Pl.'s Compl. at Exhibit A.

9. Plaintiff's use of the "badges" of fraud outlined within the IUFTA is likewise inadequate because she fails to sufficiently detail her allegations, and those cited do not collectively establish intent. Her allegation that Pepperdine took TGC's money without exchanging reasonably equivalent value completely lacks foundation. *See* Pl.'s Compl. at Count I, ¶¶ 51-52. She does not even attempt to detail, let alone undermine, the bases for this allegation. *See id.* Courtright's alleged concealment of TGC's assets from its investors and creditors is similarly in need of factual footing. *See* Pl.'s Compl. at Count I, ¶ 55. Plaintiff's allegations clearly fail to provide the precision and substance required by *BCBSM, Inc.* and *Berkowitz*.

5

10. Even if this Court deems Plaintiff's allegations sufficient on substance, they do not give rise to the inference that TGC acted with the requisite intent. Indeed, Plaintiff relies on exactly three of the eleven (11) "badges" contemplated within 740 ILCS 160/5(b).[3] While there is no "set number" of badges required to demonstrate fraud, in this case, the nature of Plaintiff's allegations (or lack thereof) strongly suggest the payments at issue were made without the necessary intent. *See DAN Venture III, L.P.*, 598 B.R. at 442. "The intent to defraud 'will be found if the circumstances indicate that the main or only purpose of the transfer was to prevent a lawful creditor from collecting a debt.'" *Id*. (quoting *Radio One, Inc. v. Direct Media Power, Inc.*, 2018 WL 4685470 at *6 (N.D. Ill. 2018). Nothing within the Complaint so much as suggests that was the case.

11. For the foregoing reasons, Plaintiff's Count I fails to state a claim upon which relief can be granted, and therefore dismissal is warranted pursuant to Rule 12(b)(6).

**B.** **Plaintiff Fails to Plead a Constructive Fraudulent Transfer Claim (Count II).**

12. Plaintiff's unsupported allegations that TGC did not receive reasonably equivalent value in exchange for payments made to Pepperdine are legally insufficient to state a claim for constructive fraud under 740 ILCS 160/5(a)(2). The proper method for determining reasonably equivalent value is to identify the value of what was transferred and compare it to what was received. *Creditor's Comm. Of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007). Illinois courts also factor whether the transaction took place at an arm's length and the good faith of the transferee. *Allstate Ins. Co. v. Countrywide Financial Corp.*, 842 F. Supp. 2d

---

[3] Plaintiff alleges that 1) TGC was insolvent, 2) Pepperdine failed to convey reasonably equivalent value in exchange for the funds paid to it by TGC, and 3) that TGC concealed assets from its investors. There are no allegations, nor is the evidence, that 1) Pepperdine was an insider, 2) TGC retained possession or control of the funds following transfer, 3) the transfer was concealed, 4) prior to the transfer, TGC had been sued or threatened with suit, 5) the transfer constituted substantially all of TGC's assets, 6) TGC absconded, 7) the transfer took place shortly before or after the incurrence of a substantial debt, or 8) TGC transferred its essential assets to a lienor who, in turn, transferred them to an insider. *See* Pl.'s Compl.; 740 ILCS 160/5(b).

1216, 1224 (C. D. Cal. 2012) (citing *In re Jumer's Castle Lodge, Inc.*, 329 B.R. 837, 843 (C. D. Ill. 2005). Those determinations require analyses of factual allegations. *DAN Joint Venture III, L.P.*, 598 B.R. at 445. "A claim is plausible when the plaintiff pleads facts which permit a reasonable inference of liability." *Allstate Ins. Co.*, 842 F. Supp. 2d at 1225 (citing *Iqbal*, 556 U.S. at 678). Dismissal is the proper remedy for failing to so plead. *Id*.

13. Here, Plaintiff alleges that 1) payments made to Pepperdine were made without TGC receiving reasonably equivalent value in exchange, and 2) any services rendered by Pepperdine did nothing more than perpetuate TGC's fraud and increase amounts owed to its investors and creditors. *See* Pl.'s Compl. at Count II, ¶¶ 63-64. Common sense dictates that the funds provided to Pepperdine – a prestigious private university – may have served any number of legitimate purposes (i.e. tuition payments), but Plaintiff makes no effort to provide information even tending to substantiate her allegations. Likewise, she fails to assign any value to services provided (which are also not identified) by Pepperdine such that it and this Court may evaluate the magnitude of the inequity she contends.

14. In addition, Plaintiff fails to adequately allege that TGC was, or became, insolvent at the time of each of the transfers to Pepperdine that she seeks to avoid and recover. In addition to pleading with some level of specificity that transfers were made that are subject to avoidance, 740 ILCS 160/5(a)(2) requires that a plaintiff prove that the transfers were made while the debtor was engaged or about to engage in a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or that the debtor intended or believed that the transfer would render it unable to pay its debts as they came due. 740 ILCS 160/5(a)(2) is phrased in the disjunctive: the Plaintiff need only prove one of the two sub-elements in order to

7

prevail on a constructive fraudulent transfer claim. But here, Plaintiff's "allegations" concerning insolvency, which are mere recitations of the statute, fall far short of sufficiency.

15. Indeed, Plaintiff's sole allegations concerning insolvency in the Complaint are pure boilerplate, tracking the requirements of the statute, with no additional factual support:

- "As a result of operating a Ponzi scheme, TGC was insolvent, undercapitalized, and operating at a loss. During all relevant times, TGC did not have sufficient assets to pay its debts to investors and/or creditors as those debts became due." Complaint, ¶ 32.

- "Because most investors have not received the return of their investment or all of the amounts due to them under the Agreements, these investors will have significant claims against the Receivership Estate to recover their investments." Complaint, ¶ 33.

16. These boilerplate allegations provide absolutely nothing in the way of meaningful data concerning TGC's financial condition at the time of each of the transfers to establish insolvency at the time. Merely reciting the elements of a constructive fraudulent transfer claim, without alleging *why or how* TGC was undercapitalized at the time of each transfer, has repeatedly been rejected by courts under Federal Rule 12(b)(6) and the *Iqbal/Twombly* pleading standards. *In re Caremerica, Inc.*, 409 B.R. 346, 353 (Bankr. E.D.N.C. 2009) ("In the absence of such factual content [describing the debtors' insolvency at the time of the transfer], the trustee cannot show that avoidance of transfers under a theory of constructive fraud is plausible."); *In re Gluth Bros. Const., Inc.*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (where plaintiff "offered no factual allegations to support its claim that the Debtor was insolvent at the time of the transfer or became insolvent because of the transfer . . . [but] merely gives a formulaic recitation of the element," dismissal of

constructive fraudulent transfer claim was appropriate); *Tow v. Bulmahn*, 565 B.R. 361, 367 (E.D. La. 2017) (affirming dismissal of fraudulent transfer claim where complaint "fail[s] to point to any financial data showing that [debtor] was actually insolvent or had little capital when" the transfers were made); *In re Island View Crossing II, L.P.*, 604 B.R 181, 200 (Bankr. E.D. Pa. 2019) (dismissing fraudulent transfer claim where insolvency was only pled using boilerplate conclusions; insolvency must be pled at the time of **each** transfer); *In re CRC Parent Corp.*, 2013 WL 781603, at *5 (Bankr. D. Del. Mar. 1, 2013) ("to adequately plead insolvency, the Trustee must present some information of the Debtors' financial status at the time of the transfer"). There simply is no excuse for Plaintiff's failure to sufficiently allege insolvency or undercapitalization, given that she has had substantial access to TGC's financial records for over 18 months.

17. Plaintiff's failures to adequately plead a lack of reasonably equivalent value and insolvency constitute grounds for dismissal of Count II of the Complaint.

C. **Plaintiff's Unjust Enrichment Claim Should be Dismissed Because it is Not a Standalone Cause of Action.**

18. Unjust enrichment is not an independent cause of action, but is instead an equitable remedy available only when there is no adequate remedy at law. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). When there is a statutory remedy available, unjust enrichment is not. *See Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 656 (1st Dist. 1995). Various courts have held that claims available under fraudulent conveyance statutes constitute the very sort of adequate legal remedies that bar pursuit of unjust enrichment claims. *See CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 566-67 (8th Cir. 2019); *In re Petters Co.*, 499 B.R. 342, 373-75 (Bankr. D. Minn. 2013); *Touchstone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1084 (D. Colo. 2012).

19. Other than Plaintiff's baseless suggestion that Pepperdine was aware of TGC's alleged scheme at the time of accepting payments, the allegations that formulate the basis for her unjust enrichment claim match those underlying Counts I and II. *See* Pl.'s Compl. at Count III. The relief she seeks is likewise identical. *Id*.

20. For those reasons, and because Plaintiff has adequate remedies at law under the IUFTA, her Count III should be dismissed pursuant to Federal Rule 12(b)(6).

**D. At Least Four of the Transfers Plaintiff Seeks to Avoid and Recover Fall Outside the Applicable Statute of Limitations Period.**

21. Pursuant to the IUFTA, at least four of the transfers Plaintiff seeks to avoid fall outside the enumerated four-year statute of limitations period, and are therefore not recoverable. Plaintiff's constructive fraud claim (Count II) is subject to a firm four-year limitations period. 740 ILCS 160/10(b). Actual fraud claims (Count I) are likewise subject to a four-year limitation, and generally the clock begins to run at the time of the transfer. 740 ILCS 160/10(a); *Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 555 (1st Dist. 2012). There is an exception, however, that permits Plaintiff to bring suit up to one year following actual discovery of the transfers or within one year of when she reasonably could have discovered them; notably, this exception applies *only* to actual fraudulent transfer claims but does not apply to constructive fraudulent transfer claims. 740 ILCS 160/10(a); *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410 (1st Dist. 2012). To that end "at some point [Plaintiff] becomes possessed of sufficient information … and the running of the limitations period commences." *Workforce Solutions*, 2012 IL App (1st) 111410 at ¶ 5 (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415-416 (1981)).

22. On March 2, 2020, Hon. Andrea R. Wood entered two stipulated preliminary injunction orders in the SEC action against TGC and Courtright. *See* Pl.'s Compl. at ¶ 5. One of those orders (Case No. 19-cv-08454, ECF No. 55) makes clear that, on January 30, 2020, following

10

her review of TGC's books and records, Plaintiff filed an Initial Report wherein she classified TGC as a Ponzi scheme. Her review of TGC's books and records served to place Plaintiff on notice of the payments to Pepperdine, and thus she had constructive knowledge of the allegedly fraudulent transfers at that time.

23. The four earliest payments at issue are dated as follows: October 5, 2016; November 16, 2016; January 18, 2017; and February 13, 2017 (the "First Transfers"). *See* Pl.'s Compl. at Exhibit A. Plaintiff, however, waited until May 3, 2021 to file her Complaint, despite have reasonable access to information concerning the First Transfers approximately 16 months prior. *See* Pl.'s Compl.

24. Plaintiff has no right to recovery of these four payments under her constructive fraud theory as a matter of law, since the discovery rule does not apply to such causes of action.[4] Moreover, due to Plaintiff having access to the books and records that would put her on notice of each of the First Transfers to Defendant by no later than January 30, 2021, at the very latest, the limitations period expired on January 30, 2021 (one year past the issuance of her Initial Report), and therefore, Plaintiff is barred from seeking to recover them.

25. As such, Plaintiff's claims for avoidance and recovery of the First Transfers, totaling $54,047.04, are untimely. They should be dismissed pursuant to Federal Rule 12(b)(6). *See* Pl.'s Compl. at Exhibit A.

## CONCLUSION

26. The heightened pleading standards required by Rule 9(b) require Plaintiff to detail her basis for alleging actual fraud. She has failed to do so, and therefore the appropriate remedy

---

[4] Claims brought under 740 ILCS 160/5(a)(2) are subject to a strict four year limitations period. 740 ILCS 160/10(b). Four years from each date, respectively, is as follows: October 5, 2020; November 16, 2020; January 18, 2021; and February 13, 2021.

is dismissal of Count I. Likewise, she fails to plead facts sufficient to formulate a basis for her constructive fraud claim, and therefore Count II is similarly subject to dismissal. Count III, a common law unjust enrichment claim, should be discharged because it is only available in the absence of legal remedies. Finally, Plaintiff is barred from seeking recovery of funds included within four early transfers from TGC to Pepperdine because they fall outside the applicable statute of limitations period.

27. For the foregoing reasons, Defendant Pepperdine University respectfully requests this Court grant its Motion to Dismiss.

Dated: July 12, 2021

Respectfully submitted,

**PEPPERDINE UNIVERSITY**

By: /s/ Thomas R. Fawkes
      One of Its Attorneys

Thomas R. Fawkes
Christopher T. Gardino
James R. Shultz
Tucker Ellis LLP
233 South Wacker Drive, Suite 6950
Chicago, Illinois 60606
Tel: 312-256-9425
Fax: 312-624-6309
thomas.fawkes@tuckerellis.com
jay.shultz@tuckerellis.com
christopher.gardino@tuckerellis.com

## **CERTIFICATE OF SERVICE**

I, Thomas R. Fawkes, an attorney, hereby certify that on July 12, 2021, I caused the foregoing *Defendant Pepperdine University's Motion to Dismiss Pursuant to Fed. R. Civ. P. R. 12(b)(6)*, to be served by CM/ECF to all parties entitled to CM/ECF notices in this case.

                                                           */s/ Thomas R. Fawkes*