UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELANIE E. DAMIAN, AS RECEIVER OF TODAY'S GROWTH CONSULTANT, INC., <br><br> Plaintiff, <br><br> v. <br><br> PEPPERDINE UNIVERSITY, <br><br> Defendant. | No. 21 C 2371 <br><br> Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Melanie Damian is the court-appointed Receiver in a Securities and Exchange Commission ("SEC") enforcement action in this district (Case No. 19 C 8454) against a company called Today's Growth Consultant, Inc. ("TGC") for engaging in a Ponzi scheme. In accordance with her mandate in the SEC action, the Receiver filed this case against Defendant Pepperdine University ("Pepperdine") seeking to recover fifteen transfers of funds on the bases of actual fraud, constructive fraud, and unjust enrichment. Before the Court is Pepperdine's motion to dismiss, R. 8. The motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges "the sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

A party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting *United Stated ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). This heightened pleading standard is designed in part to operate "as a screen against spurious fraud claims" and "to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual." *Fic. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005). Nevertheless, the particularity

2

requirements of Rule 9(b) "must be read in conjunction with Rule 8, which requires a short and concise pleading." *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 955 (N.D. Ill. 2011) (quoting *Gelco Corp. v. Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *6 (N.D. Ill. Dec. 26, 2002)). Under Rule 9(b), "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

## Background

The SEC brought an enforcement action for violations of securities laws against Kenneth D. Courtright III and TGC. A temporary restraining order was entered in the SEC case, and the Receiver was mandated to "take all actions necessary to implement the terms of the TRO by, among other things, taking possession, custody, and control of all of Defendants' assets". R. 1 at 2.

The Receiver then filed this action on behalf of the receivership estate of TGC as an ancillary proceeding to the underlying SEC enforcement action. She alleges Pepperdine wrongfully received fifteen transfers of funds from TGC without providing value in exchange for the funds, and that the funds were obtained from investors that TGC defrauded. The Receiver seeks recovery of the fifteen transfers, which occurred between October 5, 2016 and September 17, 2019, totaling $280,997.91 ("the transfers"). Specifically, the Receiver seeks to avoid and recover TGC's payments to Pepperdine on the bases of actual fraud (Count I), constructive fraud (Count II), and unjust enrichment (Count III).

**Analysis**

I.   **Counts I and II: Claims under Illinois Uniform Fraudulent Transfer Act (IUFTA)**

The Receiver alleges causes of action under both the actual fraud and constructive fraud provisions of the Illinois Uniform Fraudulent Transfer Act (IUFTA). *See Centerpoint Energy Servs., Inc. v. Halim*, 743 F.3d 503, 506 (7th Cir. 2014) (describing the actual and constructive elements of the IUFTA). Both fraud claims are subject to Rule 9(b)'s heightened pleading requirement. *See DAN v. Joint Venture III, LP v. Touris*, 598 B.R. 430, 447, 442 (N.D. Ill. 2019) (actual fraud); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997) (constructive fraud).[1]

A.   Count I: IUFTA Actual Fraud

The actual fraud provision of the IUFTA governs fraudulent transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1).[2] To succeed on an actual fraud claim, the Receiver must plead the requisite intent for each transfer she wants to avoid, connecting "the allegations against the defendants to the Debtor['s] scheme to defraud creditors." *In re Lancelot*

---

[1] Federal bankruptcy law and the IUFTA mirror each other, so courts look to bankruptcy law when applying the IUFTA. *See In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1998).

[2] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1); *see also* 740 ILCS 160/2(1) (defining transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with an asset or an interest in an asset, and includes payment of money").

*Invs. Fund, LP*, 451 B.R. 833, 839 (Bankr. N.D. Ill. 2011). A Ponzi scheme is evidence of such requisite intent. *See id.* at 841 (finding the complaint's actual fraud claim "plausible" and that "[t]e operation of the Ponzi scheme by the Debtor … adequately alleged intent to hinder and to defraud creditors on the part of the Debtors"). The "law presumes that debtors who engage in Ponzi schemes are insolvent because by definition a Ponzi scheme inevitably becomes insolvent at some point." *Id.* at 839.

In addition to the alleged operation of a Ponzi scheme, courts consider the factors listed in IUFTA 160/5(b), "known as 'badges of fraud,' … to see whether a sufficient number [give] 'rise to an inference of presumption of fraud'" to determine intent. *Wachovia Secs. LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 758 (7th Cir. 2012) (citing *Lindholm v. Holtz*, 581 N.E.2d 860, 863 (Ill. 1991); *Steel Co. v. Morgan Marshall Indus., Inc.*, 662 N.E.2d 595, 602 (Ill. 1996)). These badges include whether "the transfer or obligation was to an insider," where "insider" is defined as an "officer of the debtor" or a "relative of a … director, officer, or person in control of the debtor" if the debtor is a corporation; whether "the debtor removed or concealed assets"; whether "the value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"; and whether "the debtor was insolvent or became insolvent shortly after the transfer was made." See 740 ILCS 160/5(b); 740 ILCS 160/2(g) (defining insider). Courts isolate each transaction between the debtor and defendant to determine if reasonably equivalent value has been exchanged. *See Barber v. Golden Seed Co.*, 129 F.3d 832, 837 (7th Cir. 1997).

5

The Court finds the Receiver has sufficiently met the heightened standard of Rule 9(b) for the actual fraud prong of the IUFTA, pleading the "who, what, where, when, and how." The complaint describes: (1) who: Pepperdine University; (2) what: transfers of funds from TGC to Pepperdine; (3) where: from TGC's bank accounts; (4) when: from October 5, 2016 to September 17, 2019 (with each transaction assigned a specific date in that range); (5) how: in general, through TGC's Ponzi scheme, Courtright's involvement in it, and Pepperdine's role in accepting the funds. See R. 1 at 11-12; Ex. A.

Pepperdine argues the Receiver's complaint must be dismissed because she failed to assign intent to each individual payment, instead identifying the aggregate amount paid to Pepperdine. The Court is not convinced. In *Lancelot*, the court agreed generally with the use of the "specific transaction" approach but declined to dismiss the complaint because the case was at the motion to dismiss stage, not the summary judgment stage. 451 B.R. at 835, 840. Here, the Receiver's balance sheet lists the exact date of each transfer, the exact amount of each transfer, the bank account from which the transfer originated, and the payee of each transfer (which, in each instance, was Pepperdine). R. 1, Ex. A. At this stage, that is sufficient for an actual fraud claim.

Similarly, the Court rejects Pepperdine's argument that the Receiver's actual fraud claim is "conclusory." *See* R. 8 at 5. First, the Receiver repeatedly describes and alleges the circumstances of the Ponzi scheme at play, which in and of itself is sufficient to allege intent for an actual fraud claim. And at this stage, knowledge that the transfers were fraudulent may be alleged generally. *See BCBSM, Inc. v. Walgreen*

6

*Co.*, 512 F. Supp. 3d 837, 852 (N.D. Ill. 2021) (noting that the defendants were attempting to hold the plaintiff to a higher standard than required at the pleading stage, where "malice, intent, [and] knowledge … may be alleged generally"). Even though her allegations of the Ponzi scheme are sufficient to survive a motion to dismiss, the Receiver also alleges various badges of fraud listed in the IUFTA.[3] Specifically, she alleges the Ponzi scheme existed at the time of the transfers to Pepperdine, that TGC was insolvent at the time of the transfers, that Pepperdine received the transfers without providing reasonably equivalent value to TGC, and that Courtright removed and/or concealed TGC's assets from investors at the time of the transfers. R. 1 at 9-10; R. 15 at 5. Therefore, the Court finds the Receiver's complaint survives the heightened standard of Rule 9(b).

B. Count II: IUFTA Constructive Fraud

The motion to dismiss the Receiver's claim for constructive fraud is also denied.[4] To succeed on a constructive fraud claim, the movant "must prove both that the debtor received less than a reasonably equivalent value in exchange for the

---

[3] *See In re Mack Indus.*, 2020 WL 6589040, at *6-7 (holding the actual fraud claim was plead "just barely" because "[s]ome of [the] allegations could fall within the various badges of fraud."

[4] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets or the debtor were unreasonably small in relation to the business transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 740 ILCS 160/5(a)(2).

commission payments and that the debtor was insolvent at the time of transfers." *See In re First Com. Mgmt. Grp.*, 279 B.R. 230, 235 (Bankr. N.D. Ill. 2002). Like the IUFTA actual fraud provision, "a transfer lacks reasonably equivalent value if there is no or inadequate consideration." *Creditor's Com. of Jumer's Castle Lodge v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007). Whether or not something constitutes a reasonably equivalent value is a fact-specific inquiry, and to determine whether reasonably equivalent value has been exchanged, courts isolate the transactions between the debtor and the defendant. *Barber,* 129 F.3d at 387. A presumption of constructive fraud arises "where (1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor has incurred obligations elsewhere; (3) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer; and (4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness." *Gen. Elec. Cap. Corp.*, 128 F.3d at 1079.

Pepperdine argues the Receiver has not sufficiently pled her constructive fraud claim because she only provides recitations of the statute. But the complaint adequately sets forth the elements of an IUFTA constructive fraud claim. The Receiver alleges: (1) that the transfers to Pepperdine were made voluntarily, under the direction of Courtright, and were voluntarily accepted by Pepperdine; (2) that TGC had other obligations to investors and creditors at the time; (3) that no reasonably equivalent value was exchanged for the transfers; and (4) that TGC did not retain enough funds to repay its debts to either its investors—most of whom still have not recovered their investments—or its creditors. R. 1 at 9-10, 15. Further, the

8

Court is not persuaded by Pepperdine's argument that the Receiver has not excluded potential legitimate purposes for the transfers, such as tuition payments. First, the transfers came from TGC, but TGC was of course not itself enrolling in school at Pepperdine. And importantly, this argument attempts to hold the Receiver to a heightened standard, detailing a fact-specific inquiry better suited for a later stage in the proceedings. At this time, the Receiver does not need to allege enough facts to discount every other potential reason for the transfers. She has sufficiently pled the facts necessary to allege a constructive fraud claim, and the motion to dismiss is denied as to Count II.[5]

## II.     Unjust Enrichment

Pepperdine argues the unjust enrichment claim constitutes an equitable cause of action only available in the absence of an adequate legal remedy. It contends the IUFTA provides the Receiver with an adequate legal remedy and therefore the unjust enrichment claim must be dismissed. The Court disagrees.

To state a claim for unjust enrichment, the Receiver must show the "defendant [retained] a benefit to the [Receiver's] detriment, and this retention is unjust. *Cleary v. Philip Morris, Inc.*, 565 F.3d 511, 517 (7th Cir. 2011). Retention of a benefit is unjust when "(1) the benefit should have been given to the plaintiff but was mistakenly given to the defendant; (2) the defendant procured the benefit through

---

[5] For the first four transfers of money alleged in this case, the statute of limitations for IUFTA constructive fraud bars recovery. The statute of limitations is discussed, *infra*, at Section IV. For the remainder of the alleged transfers (all transfers other than the first four listed in Section IV), however, the constructive fraud claim is sufficiently pled.

wrongful conduct; or (3) the plaintiff simply has a better claim to the benefit than the defendant." *See Kopecky v. RJM Invs.*, 2009 WL 274615, at *3 (N.D. Ill. Aug. 26, 2009) (finding the defendants were unjustly enriched for retaining profits in an alleged "fraudulent scheme"). "If an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 565 F.3d at 517.

The Receiver has sufficiently pled a claim for unjust enrichment. She alleges TGC conferred a benefit on Pepperdine when it made the transfers to it. She alleges Pepperdine voluntarily accepted the transfers from TGC without providing reasonably equivalent value to TGC and retained the benefit conferred on it. She finally alleges the transfers to Pepperdine were inherently unfair because they further delayed or prevented the wronged TGC investors from recovering their investments. The Court finds the Receiver's unjust enrichment allegations are tied to Counts I and II and are sufficiently pled. The motion to dismiss the unjust enrichment claim is denied.

### III. Statute of Limitations

Pepperdine argues the earliest four transfers fall outside the relevant statute of limitations. Both the actual and constructive fraud claims are subject to a four-year statute of limitations and generally begin to run at the time of transfer. *See* 740 ILCS 160/10(a) (actual fraud); 740 ILCS 160/10(b) (constructive fraud). There is an exception for actual fraud claims that permits a plaintiff to bring suit up to one year

following discovery of the transfers or within one year of when she reasonably could have discovered them. *Workforce Solutions v. Urban Servs. of America, Inc.*, 2012 IL App (1st) 111410 (1st Dist. 2012).

The four earliest payments occurred on October 5, 2016; November 16, 2016; January 18, 2017; and February 13, 2017. Thus, the statute of limitations lapsed for the latest of these four transactions on February 13, 2021. 740 ILCS 160/10(b). The Receiver filed her complaint on May 3, 2021. The Receiver makes no argument in response to Pepperdine's argument for dismissal of the constructive fraud count for the first four transfers. The Court agrees they are untimely, and thus the Receiver cannot recover, under a constructive fraud theory, on the first four transfers.

In addition, the Court rejects Pepperdine's statute of limitations argument as to the actual fraud claims. The Receiver is not time-barred if she brought suit within one year of discovering the transfers or within one year of when she reasonably should have discovered them. Pepperdine urges the Court to review a January 30, 2020 joint status report submitted in front of Judge Wood, which it contends supports its argument that the Receiver knew or should have known of the four earliest transfers on that date, making the latest non-time-barred date for filing her complaint January 30, 2021. R. 8 at 11. The Receiver argues the status report does not support such a position, that she had only been recently appointed Receiver, and that she should not have been expected to know of every transfer at that time. R. 15 at 10.

The timeliness issue as to the actual fraud claims for the four earliest transfers is fact-specific and involves inquiries as to what the Receiver knew and when. The

11

Court declines to consider the joint status report, which falls outside the four corners of the complaint. *See Covington v. Ill. Sec. Serv.*, 269 F.3d 863, 864-65 (7th Cir. 2001). Even if the Court were to consider the joint status report, the factual dispute would still remain. Without the benefit of discovery, the Receiver has not had a meaningful opportunity to rebut Pepperdine's arguments. *Id.* The question of whether the Receiver can recover for the four earliest transfers under her actual fraud theory is not suitable for determination at this stage. *See Sidney Hillman Health Ctr. Of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would beat a statute of limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete record."); *United States v. LaSalle Bank, N.A.*, 2008 WL 4874169, at *3 (N.D. Ill. July 29, 2008) (finding the timeliness debate was a factual dispute not appropriate for a motion to dismiss). The motion to dismiss the actual fraud count as untimely as applied to the first four transfers is denied.

## Conclusion

For the foregoing reasons, the motion to dismiss, R. 8, is granted in part and denied in part. The Receiver is time-barred from recovering for the first four transfers on a constructive fraud theory. The motion is otherwise denied.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: March 14, 2022